LEIGH M. CLARK, Retired Circuit Judge.
Appellant was indicted for murder of Larry Frank Russell, pursuant to Criminal Code § 13A-6-2, which provides in pertinent part:
“(a) A person commits the crime of murder if:
[[Image here]]
[[Image here]]
“(3) He commits or attempts to commit . . . ‘burglary in the first or second degree’ and, in the course of and in furtherance of the crime that he is committing or attempting to commit . .., he, or another participant if there be any, causes the death of any person.”
A jury found him guilty, and he was sentenced to imprisonment in the State Penitentiary for life without the benefit of parole. The sentencing was pursuant to due notice to defendant and a hearing charging that he was an habitual offender. The undisputed evidence shows that he had been previously convicted of three felonies, which according to Criminal Code, 1981 Cumulative Supplement, § 13A-5-9(c)(3), requires punishment “by imprisonment for life without parole.”
The undisputed evidence shows that on November 9, 1980, the defendant and two other men forced an entry into the back door of the residence where the deceased *977 lived, and the deceased was killed by a slug from a shotgun shell or a long rifle cartridge. There was some evidence that one of the other two men fired the shot, and there was some evidence that defendant did so. According to the express language of the pertinent provision of the Criminal Code, defendant was guilty irrespective of whether he, as distinguished from one of the other two men, fired the shot. The jury was amply justified in returning the verdict against the appellant. It appears incidentally that the other two men have been indicted and probably tried. We intentionally refrain from any comment at this time that might bear upon the merits of any appeal in either of the other two cases.
We do not agree with the contention of appellant that defendant’s confession was erroneously admitted in evidence. It should be noted that defendant did not admit that he fired the fatal shot, but claimed that one of the other two men did so. A law enforcement officer, after having been called by the defendant to talk with him, testified comprehensively as to the giving of the requisite warnings and instructions as to all of the pertinent constitutional rights of the defendant. We find that the confession was voluntarily, knowingly and understandingly given by defendant without any inducement whatever on the part of anyone else.
Appellant argues that there was an entry and search of the house in which defendant lived without his consent, that violated his security against unreasonable searches and seizures.
Officer James Parker testified that, about five hours after the homicide, he went to the home of defendant and the following occurred:
“Q. Did you knock on the door?
“A. Yes, sir, I did.
“Q. And who answered the door?
“A. Mrs. Barr (defendant’s mother).
“Q. And what did you say to her, please, sir?
“A. I asked her if Bud [the appellant] was there.
“Q. And what did she say?
“A. She advised yes, that he was.
“Q. And did you ask if you could enter the house?
“A. Yes, sir, I did.
“Q. What did she say?
“A. She said yes, come on in.
“Q. And what occurred when you went in?
“A. We went inside the house and walking through the living room, Sergeant Yearick and Investigator Duffey and myself, and Officer Balance came in later. After we got inside and just as we were going through the living room, a subject came down from upstairs.”
Thereupon, there was a lengthy hearing out of the presence of the jury, which included intensive interrogation and cross-interrogation of Officer Parker, which chiefly related to his arrest of Howard William Barr, who was the “subject” that the witness said “came down from upstairs.” During this hearing out of the presence of the jury the witness was comprehensively examined and cross-examined as to his taking Mr. Barr to headquarters and as to Mr. Barr’s confession of his participation in the breaking and entry into the residence of Mr. Russell, but in which he denied that he had fired the shot that killed him. Upon the conclusion of the hearing out of the presence of the jury, defendant’s counsel moved as follows:
“Your Honor, we would move to exclude his testimony based on the fact that this was a nighttime search of the house and also it was an arrest — or that he could have secured the warrant for the arrest prior to coming in during the nighttime.”
The court then overruled the motion, the jury was returned to the courtroom and the trial was resumed, at which time there was largely a repetition of what the witness had testified out of the presence of the jury, and at which time he was questioned both by the State and by defendant’s counsel. Following is a part of the interrogation by defendant’s counsel:
“Q. What I’m asking, Officer Parker, is these weapons that are right here presently have been identified as belonging to *978 the owner of the house. Did you subsequently locate those weapons?
“A. Yes, sir, I did.
“Q. And where were the weapons found?
“A. They were under Mr. Barr’s mattress in his house. I didn’t locate them. I had taken him out to the car. Sergeant Yearick, Officer Balance and Investigator Duffey located those.
“Q. But they were located at his house, where he said in his statement they were located; is that correct?
“A. Yes, sir.
“MR. TINGLE: I have no further questions.”
Whatever evidence there was, which was nebulous, as to the seizure of any property in the house of Mrs. Barr was limited to weapons found under Mr. Barr’s mattress in his house, which was brought out by defendant. For this reason, it can furnish no basis for an assertion of error on appeal.
Appellant’s contention that there was no probable cause for his arrest is utterly without merit. The homicide had obviously been committed. Mr. Barr had not confessed at the' time of his arrest, but Officer Parker had conducted an intensive investigation for a few hours and had interviewed eyewitnesses to what occurred immediately before, immediately after and at the time that Mr. Russell was killed, which constituted more than probable cause that he was guilty thereof as a principal or as an aider or abettor.
We find no error in the record prejudicial to defendant. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court. The judgment of the trial court is hereby
AFFIRMED.
All the Judges concur.